# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In re:

J.S. II, L.L.C., *et al.*,

               Debtors.

J.S. II, L.L.C.; RIVER VILLAGE I, L.L.C.; and RIVER VILLAGE WEST, L.L.C.,

               Appellants,

v.

THOMAS A. SNITZER and SNITZER FAMILY L.L.C.,

               Appellees.

Case No. 08-C-03582

Hon. James B. Moran, District Judge

(Appeal from the United States Bankruptcy Court for the Northern District of Illinois in Case No. 07-03856, Hon. Jacqueline P. Cox, Presiding)

---

## APPELLANTS' BRIEF

---

Steven B. Towbin
Janice A. Alwin
Shaw Gussis Fishman Glantz
Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
P: (312) 276-1333
F: (312) 275-0569

Attorneys for Appellants

{5618 BRF A0211903.DOC}

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................1

APPELLANTS' STATEMENT OF THE BASIS OF THIS COURT'S JURISDICTION ............2

APPELLANTS' STATEMENT OF THE CASE, THE PROCEEDINGS AND THE
DISPOSITION OF THE CASE IN THE BANKRUPTCY COURT ..............................................2

APPELLANTS' STATEMENT OF THE ISSUES ON APPEAL AND THE
STANDARD OF REVIEW ........................................................................................................5

ARGUMENT .........................................................................................................................5

    1.    This Court has jurisdiction to hear and resolve this appeal. ................................... 5

    2.    Snitzer lacks standing to seek the remedy of equitable subordination of
Kinsella's and Diamond's interests based on alleged injuries to the
Debtors. ...................................................................................................................... 8

    3.    Snitzer violated the automatic stay by usurping the Debtors' claims for
Snitzer's personal benefit........................................................................................ 13

    4.    *Vitreous Steel* does not allow Snitzer to prosecute the Debtors' claims for
Snitzer's personal benefit........................................................................................ 16

CONCLUSION......................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Butner v. United States*,
    440 U.S. 48 (1979)............................................................................................ 12

*Caparos v. Morton*,
    845 N.E.2d 773 (Ill. App. Ct. 2006) ...................................................... 10, 14, 15

*Chelentis v. Luckenbach S.S. Co.*,
    247 U.S. 372 (1918)......................................................................................... 10

*Ching v. Porada*,
    2008 WL 2468733 (N.D. Ill. June 20, 2008)........................................... 14, 15, 19

*Chrysler Rail Transp. Corp. v. Indiana Hi-Rail Corp.*,
    1996 WL 238788 (N.D. Ill. May 7, 1996)........................................................... 13

*Frank v. Hadesman & Frank, Inc.*,
    83 F.3d 158 (7th Cir. 1996) .................................................................... passim

*Golden Tee, Inc. v. Venture Golf Sch., Inc.*,
    969 S.W.2d 625 (Ark. 1998) .............................................................................. 19

*In re Airadigm Communications, Inc.*,
    519 F.3d 640 (7th Cir. 2008) ............................................................................. 6

*In re Automotive Professionals, Inc.*,
    389 B.R. 630 (Bankr. N.D. Ill. 2008) ............................................................... 8, 9

*In re Behrens*,
    900 F.2d 97 (7th Cir. 1990) ............................................................................... 1

*In re Big Wheel Holding Co., Inc.*,
    214 B.R. 945 (D. Del. 1997)........................................................................... 9, 11

*In re Chunn*,
    106 F.3d 1239 (5th Cir. 1997) ............................................................................ 7

*In re Clark*,
    374 B.R. 874 (Bankr. M.D. Ala. 2007) ............................................................... 3

*In re Elrod Holdings Corp.*,
    2008 WL 3200094 (Bankr. D. Del. Aug. 7, 2008) ............................... 9, 12, 16, 17

*In re Enyedi*,
 371 B.R. 327 (Bankr. N.D. Ill. 2007) ................................................................. 15

*In re Forty-Eight Insulations, Inc.*,
 115 F.3d 1294 (7th Cir. 1997) ........................................................................ 7

*In re James Wilson Assocs.*,
 965 F.2d 160 (7th Cir. 1992) ......................................................................... 9

*In re Morpheus Lights, Inc.*,
 228 B.R. 449 (Bankr. N.D. Cal. 1998) ......................................................... 9, 11

*In re Perkins*,
 902 F.2d 1254 (7th Cir. 1990) ...................................................................... 13

*In re Quigley Co., Inc.*,
 2008 WL 2854130 (Bankr. S.D.N.Y. July 25, 2008) .......................................... 9

*In re Real Marketing Servs., LLC*,
 309 B.R. 783 (S.D. Cal. 2004)........................................................... 10, 12, 13, 15

*In re Res. Tech. Corp.*,
 528 F.3d 467 (7th Cir. 2008) ...................................................................... 6, 7

*In re Rimsat, Ltd.*,
 98 F.3d 956 (7th Cir. 1996) ......................................................................... 16

*In re Rodriguez*,
 334 B.R. 754 (1st Cir. Bankr. 2005) ............................................................... 7

*In re SRJ Enters., Inc.*,
 151 B.R. 189 (Bankr. N.D. Ill. 1993) ......................................................... 16, 18

*In re Van Dresser Corp.*,
 128 F.3d 945 (6th Cir. 1997) ................................................................. passim

*In re Vitreous Steel Products Co.*,
 911 F.2d 1223 (7th Cir. 1990) ............................................................... passim

*Kennedy v. Venrock Assocs.*,
 348 F.3d 584 (7th Cir. 2003) ...................................................... 9, 13, 14, 15

*Klier v. Siegel*,
 558 N.E. 2d 583 (Ill. App. Ct. 1990) ............................................................. 19

*Klingman v. Levinson*,
 158 B.R. 109 (N.D. Ill. 1993) ......................................................................... 3

*Koch Refining v. Farmers Union Central Exchange, Inc.*,
    831 F.2d 1339 (7th Cir. 1987), *cert. denied*, 485 U.S. 906 (1988)........................................ 13

*Levy v. Markal Sales Corp.*,
    643 N.E.2d 1206 (Ill. App. Ct. 1994) ................................................................................... 14

*NMHG Fin. Servs., Inc. v. Wickes Inc.*,
    2007 WL 3087146 (N.D. Ill. October 17, 2007) .................................................................... 8

*Pepper v. Litton*,
    308 U.S. 295 (1939)............................................................................................................. 10

*Spillyards v. Abboud*,
    662 NE.2d 1358 (Ill. App. Ct. 1996) .................................................................................... 14

*Sterling Radio Stations, Inc. v. Weinstine*,
    765 N.E.2d 56 (Ill. App. Ct. 2002) ....................................................................................... 14

*Taylor v. Standard Gas & Elec. Co.*,
    306 U.S. (1939)..................................................................................................................... 10

*Thomas v. Nat'l Can. Fin. Corp.*,
    1995 WL 54473 (N.D. Ill. Feb. 7, 1995) .............................................................................. 19

*Warth v. Seldin*,
    422 U.S. 490 (1975).............................................................................................................. 9

## Statutes

11 U.S.C. § 101 ........................................................................................................................ 1, 10

11 U.S.C. § 1107 ......................................................................................................................... 13

11 U.S.C. § 323 ........................................................................................................................... 13

11 U.S.C. § 362 ..................................................................................................................... passim

11 U.S.C. § 510 ..................................................................................................................... passim

11 U.S.C. § 541 ....................................................................................................................... 4, 13

28 U.S.C. § 1292 ........................................................................................................................... 8

28 U.S.C. § 158 ....................................................................................................................... 2, 7, 8

**Rules**

Fed. R. Bankr. P. 8003 .................................................................................................. 2, 7, 8

**Other Authorities**

1 COLLIER ON BANKRUPTCY ¶ 5.07(4) (15th ed. 2008) .................................................. 8

10 COLLIER ON BANKRUPTCY ¶ 8003.03 (15th ed. 2007) ............................................ 8

3 NORTON BANKRUPTCY LAW AND PRACTICE § 53:3 (3d ed. 2008) ........................... 10

4 COLLIER ON BANKRUPTCY § 510.02[1] (15th ed. 2008) ........................................... 10

BLACK'S LAW DICTIONARY at 1294 (6th ed. 1990) .................................................... 10

Kaleinberge, *Direct Versus Derivative and the Law of Limited Liability
    Companies*, 58 Baylor L. Rev. 63 (2006) .............................................................. 14

# INTRODUCTION

This is the appeal of three Illinois limited liability company chapter 11 debtors in possession, J.S. II, L.L.C. ("JS II"), River Village West, L.L.C. ("RV West"), and River Village I, L.L.C. ("RV I," and together with JS II and RV West, the "Debtors"), from a Memorandum Opinion and Order ("Order")[1] (R. 13, Dkt. No. 676)[2] that denied the Debtors' motion to dismiss an equitable subordination complaint asserted pursuant to 11 U.S.C. § 510(c)[3] by Thomas A. Snitzer and Snitzer Family LLC (referred to collectively hereinafter in the singular as "Snitzer") against Messrs. John Kinsella ("Kinsella") and Sidney Diamond ("Diamond"). Snitzer claims to be a fifty percent (50%) member-owner of the Debtors. Messrs. Kinsella and Diamond are the Debtors' other member-owners.

The central issue presented by this appeal is whether one member of a limited liability company in bankruptcy may seek the remedy of equitable subordination of another member's interest based on injuries to the debtor that give rise to derivative claims that are the property of a debtor's bankruptcy estate. In *In re Vitreous Steel Products Co.*, 911 F.2d 1223 (7th Cir. 1990), on which the bankruptcy court principally relied, the Seventh Circuit held that an unsecured creditor had standing to seek the equitable subordination of another creditor's claim. *Id.* at 1231. However, the *Vitreous Steel* court did not discuss and therefore did not decide whether the

---

[1] The bankruptcy court did not enter a separate order apart from its Memorandum Opinion. That, however, should not be fatal to this appeal. *In re Behrens*, 900 F.2d 97, 99-100 (7th Cir. 1990).

[2] References to items in the record on appeal, filed on June 16, 2008 (bankruptcy court docket no. 695), shall be designated as "R. _____, Dkt. No. _____." A copy of the Debtors' designation of the record on appeal is included in the Appendix filed concurrently with this brief pursuant to Fed. R. Bankr. P. 8009(b).

[3] Unless otherwise indicated, all references to statutory provisions are intended as references to provisions of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

remedy of equitable subordination is available to a party based on alleged violations of the bankrupt *debtor's* rights as opposed to the *party's* individual rights.  Based on fundamental principles of constitutional and prudential standing, the Debtors respectfully submit that the bankruptcy court erred by applying *Vitreous Steel* to allow Snitzer to use the Debtors' claims, which are property of their chapter 11 estates, for Snitzer's personal benefit in violation of the automatic stay in force and effect pursuant to § 362(a)(3) of the Bankruptcy Code.

## APPELLANTS' STATEMENT OF THE BASIS OF THIS COURT'S JURISDICTION

This Court has jurisdiction over this appeal as an appeal from a final order within the meaning of 28 U.S.C. § 158(a)(1).  Alternatively, this Court has discretion to hear this as an appeal from an interlocutory order within the meaning of 28 U.S.C. § 158(a)(3).  *See* Fed. R. Bankr. P. 8003(c).  In light of Snitzer's motion to dismiss, the Debtors will fully address the issue of this Court's jurisdiction in the Argument section of this brief.

## APPELLANTS' STATEMENT OF THE CASE, THE PROCEEDINGS AND THE DISPOSITION OF THE CASE IN THE BANKRUPTCY COURT

The Debtors agree with the bankruptcy court's plenary statement of the facts giving rise to this appeal.  With respect to the more limited scope of this appeal, however, the relevant facts are the following:

The Debtors commenced their related chapter 11 cases in this judicial district on March 5, 2007.  On May 31, 2007, Snitzer filed a Proof of Interest (R. 1, Dkt. 188) in the chapter 11 cases.  Thereafter, the Debtors filed an objection to Snitzer's Proof of Interest coupled with counterclaims against Snitzer.  (R. 2, Dkt. 311.)  Snitzer answered the counterclaims and sought to equitably subordinate Kinsella's and Diamond's equity interests in the Debtors through a third-party complaint.  (R. 7, Dkt. No. 406.)

In his equitable subordination complaint, Snitzer alleged that Kinsella and Diamond commingled the *Debtors'* assets, undercapitalized the *Debtors*, and mismanaged the *Debtors*. (Order at 9-11, R. 13, Dkt. 676.)  The bankruptcy court's description of the factual basis of Snitzer's third-party complaint is correct.

Snitzer's "commingling" claim is set forth in paragraphs 26-50 of the third-party complaint (R. 7, Dkt. No. 406).  The gist of the claim is that Kinsella and Diamond allegedly used assets of two of the three separate companies for the benefit of the third company.  This, Snitzer concludes, was "injurious to JS II and River Village West."  (*Id*. at ¶ 49.)

In essence, a "commingling" claim is a fraudulent conveyance claim in which an asset of one insolvent entity is allegedly used for the benefit of another without adequate consideration. As this Court has held, however, fraudulent conveyance claims may only be prosecuted by a trustee or debtor in possession while an entity is in a bankruptcy proceeding.  *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993).[4]

Moreover, the only assets that Snitzer alleges were commingled were those of the Debtors.  There is no allegation that any of Snitzer's assets were improperly used or commingled.  Thus, there is no allegation of a direct personal injury to Snitzer as opposed to the Debtors in the twenty-five paragraphs that make up the commingling claim.

Similarly, the mismanagement and undercapitalization claims contained in paragraphs 51-87 of the third-party complaint allege injuries only to the Debtors, not Snitzer.  These injuries were allegedly incurred as a result of Kinsella's and Diamond's conduct.  There is no allegation, however, that Kinsella or Diamond failed to capitalize Snitzer's activities or those of the Snitzer

---

[4] *See In re Clark*, 374 B.R. 874, 876 (Bankr. M.D. Ala. 2007) (collecting cases that apply the universal rule that only an estate representative may pursue fraudulent conveyance claims after a bankruptcy case is commenced).

Family LLC.  That is because Kinsella's and Diamond's capitalization duties run to the Debtors and not to Snitzer.

Also, all of Snitzer's allegations of mismanagement pertain exclusively to the Debtors. As managers of the Debtors, Kinsella and Diamond were charged with managing the Debtors' business and assets.  Kinsella and Diamond had no duty to manage Snitzer's business and assets. Consequently, all of Snitzer's claims are derivative claims that were held by the Debtors prior to the commencement of their chapter 11 cases and became property of the Debtors' estates as a matter of law pursuant to § 541(a) upon the commencement of their chapter 11 cases.

At no time did Snitzer seek or obtain a modification of the automatic stay in effect pursuant to § 362(a) to pursue the Debtors' claims against Kinsella and Diamond.  Similarly, Snitzer never sought or obtained permission from the bankruptcy court to pursue the equitable subordination claims derivatively for the benefit of the Debtors' estates and their creditors.

The Debtors asked the bankruptcy court to dismiss Snitzer's third-party complaint for Snitzer's lack of standing and Snitzer's usurpation of the Debtors' claims for Snitzer's personal benefit in violation of the automatic stay.  The Debtors also sought sanctions for Snitzer's violation of the automatic stay.  (Debtors' Motion to Dismiss, R. 8, Dkt. No. 509; Reply, R. 12, Dkt. No. 586; Order at 11-14, R. 13, Dkt. No. 676.)  The bankruptcy court, however, denied the Debtors' motion to dismiss and request for sanctions.  *See* Order at 1, 26 (R. 13, Dkt. No. 676.) This appeal followed.  *See* Debtors' Notice of Appeal (R. 14, Dkt. No. 683.)

## APPELLANTS' STATEMENT OF THE ISSUES ON APPEAL
## AND THE STANDARD OF REVIEW

The issues on appeal[5] are as follows:

1)      If the rights that were allegedly violated by Kinsella's and Diamond's conduct were the Debtors' rights and not Snitzer's rights, does Snitzer have constitutional and prudential standing to seek the remedy of equitable subordination against Kinsella and Diamond for his personal benefit?

2)      If the rights that were allegedly violated by Kinsella's and Diamond's conduct were the Debtors' rights and not Snitzer's rights, is the equitable subordination claim made by Snitzer to vindicate those rights property of the Debtors' chapter 11 estates?

3)      If the rights that were allegedly violated by Kinsella's and Diamond's conduct were the Debtors' rights and not Snitzer's rights, did Snitzer violate § 362(a)(3) of the Bankruptcy Code by asserting a claim based on the Debtors' alleged injuries against Kinsella and Diamond for Snitzer's personal benefit without leave of the bankruptcy court?

The issues raised by this appeal are legal.  There are no factual disputes.  The well-pleaded factual allegations, as opposed to the legal conclusions, contained in Snitzer's third-party complaint are taken as true.  Consequently, this Court reviews the bankruptcy court's legal conclusions *de novo* and without deference to those conclusions.

## ARGUMENT

**1.      This Court has jurisdiction to hear and resolve this appeal.**

The bankruptcy court's Order is final as to the Debtors, as opposed to Messrs. Kinsella and Diamond, the named parties in the third-party complaint who continue to litigate the merits of those claims.[6]  The Debtors' role in the underlying litigation, however, is concluded except for

---

[5] Appellants have elected not to pursue the issue of whether Appellees' claims are barred by doctrines of preclusion, which was previously designated as an issue for this appeal.

[6] On June 26, 2001, Snitzer refiled his third-party complaint as a separate adversary proceeding against Kinsella and Diamond.  (R. 15, Dkt. No. 712.)  That case is pending in the bankruptcy court as Adv. Pro. No. 08-502.  The allegations of Snitzer's new complaint are essentially the same as the allegations of the third-party complaint, except for the deletion of references to Kinsella's and Diamond's postpetition conduct.

this appeal.  Thus, there is no further action to be taken by the bankruptcy court with respect to the Debtors' claims against Snitzer.

Appellate courts, including the Seventh Circuit, apply a "more flexible jurisdictional standard" in bankruptcy appeals than appeals in civil litigation.  *In re Res. Tech. Corp.*, 528 F.3d 467, 474 (7th Cir. 2008), and cases cited therein.  Therefore, even though the underlying litigation remains pending, this Court has jurisdiction to hear this appeal because (i) the discrete issue of whether the claims asserted in the third-party complaint are or are not property of the Debtors' chapter 11 estates has been resolved, (ii) the discrete issue of whether the automatic stay has been violated has been resolved, and (iii) the Debtors' role in the underlying litigation has been concluded.  Consequently, while the underlying litigation continues against Kinsella and Diamond, all of the Debtors' claims have been definitively and conclusively resolved.  Those issues are distinct and separate from the remaining issues in the underlying litigation.

In addition, this Court's resolution of the legal issues presented by this appeal will advance the ultimate resolution of the Debtors' chapter 11 cases.  If the claims being asserted by Snitzer against Kinsella and Diamond are property of the Debtors' chapter 11 estates, then the Debtors' chapter 11 plan may (and must) deal with them.  They can either be prosecuted or settled for consideration that flows to the creditors.  *See In re Airadigm Communications, Inc.*, 519 F.3d 640, 655-56 (7th Cir. 2008) (approving a chapter 11 plan providing for a third-party release to an entity that was financing the plan).  If, however, the claims being asserted by Snitzer are not property of the Debtors' estates, then the Debtors' estates may not prosecute or settle them for additional consideration to be supplied by Kinsella and Diamond and paid to the Debtors' creditors.

The Debtors' chapter 11 cases have been pending for more than a year.  Almost all of the Debtors' remaining real estate and other assets have been or are in the process of being liquidated.  The resolution of the claims that are the subject of this appeal are material to the Debtors' plan process, which will be the culmination of these chapter 11 cases.

It is exactly these types of considerations that the Seventh Circuit recently applied to determine that it had jurisdiction to resolve the merits of an appeal from an order that did not even conclusively resolve all of the claims of a single creditor against the debtor's estate. *Res. Tech.*, 528 F.3d at 474.  Applying the "more flexible jurisdictional standard" that governs bankruptcy appeals, the Seventh Circuit concluded that the order appealed from was nevertheless "final" for the purpose of 28 U.S.C. § 158(d)(1).  *Id.*

Moreover, orders such as the Order on appeal here that determine that property is not property of a bankruptcy estate are final orders for the purpose of 28 U.S.C. § 158(a)(1).  *E.g., In re Rodriguez*, 334 B.R. 754, 757 (1st Cir. Bankr. 2005), and cases cited therein.  Further, it is well-settled that orders that implicate the automatic stay, which is a statutory injunction, are appealable as a matter of right.  *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1298-1300 (7th Cir. 1997); *see also In re Chunn*, 106 F.3d 1239, 1241 (5th Cir. 1997) (collecting cases).  Here, the bankruptcy court held that the stay occasioned by § 362(a)(3) was not violated.  (Order at 14, R. 13, Dkt. No. 676.)  Accordingly, the Order denied Appellants' claim for sanctions.  (*Id.*)  That, by itself, makes the Order final for the purpose of appeal as it terminated the Debtors' role in the litigation and left nothing further for the bankruptcy court to do in respect to the Debtors' sanctions claim.

Even if the order appealed from is not final, it is reviewable as an interlocutory order under 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8003.  *See* 1 COLLIER ON BANKRUPTCY

¶ 5.07(4) at pp. 5-3 through 5-4 (15th ed. 2008).  The Order in this case decided controlling

questions of law as to which there is substantial ground for a difference of opinion.  Further, this

appeal may materially advance the ultimate termination of the underlying litigation.  Indeed,

reversal of the bankruptcy court's order will end the litigation.  Many courts have adopted these

standards, which are based on 28 U.S.C. § 1292(b), in deciding whether to grant leave to appeal

an interlocutory order issued by a bankruptcy court.  *NMHG Fin. Servs., Inc. v. Wickes Inc.*,

2007 WL 3087146, at *1 (N.D. Ill. October 17, 2007), and cases cited therein.  *See generally*

10 COLLIER ON BANKRUPTCY ¶ 8003.03 at pp. 8003-4 through 8003-6, and cases collected at n.2

(15th ed. 2007).  Should this Court determine that the order is not final under 28 U.S.C.

§ 158(a)(1), Appellants respectfully request that they be granted leave to appeal pursuant to

Fed. R. Bankr. P. 8003.

>     **2.**     **Snitzer lacks standing to seek the remedy of equitable subordination of
>            Kinsella's and Diamond's interests based on alleged injuries to the Debtors.**

In *In re Automotive Professionals, Inc.*, 389 B.R. 630 (Bankr. N.D. Ill. 2008), the court

summarized the fundamental principles of both constitutional and prudential standing, which

require two separate analyses.  The court capsulized the two separate standards as follows:

> The Supreme Court has held that, at an irreducible minimum, *Art. III* requires the
> party who invokes the court's authority to show that he *personally* has suffered
> some actual or threatened injury as a result of the putatively illegal conduct of the
> defendants, . . . and that the injury fairly can be traced to the challenged action
> and is likely to be redressed by a favorable decision.

> * * * *

> A party lacks prudential standing if it asserts a generalized grievance, is not the
> real party in interest but *asserts a third party's rights*, or asserts an injury outside
> the zone of interests a given statute was designed to protect.  Thus, under
> prudential standing principles, a party has standing to prosecute a suit in the
> federal courts only if it is the real party in interest to the action.  *A real party in
> interest is the person holding the substantive right sought to be enforced*, and not
> necessarily the person who will ultimately benefit from the recovery.

*Automotive Professionals*, 389 B.R. at 633 (internal quotes and citations omitted, emphasis added).

The Seventh Circuit has recognized that while a provision of the Bankruptcy Code may provide Article III standing to a party, the requirements of prudential standing must also be met in order for a putative plaintiff to proceed. *In re James Wilson Assocs.*, 965 F.2d 160, 168-69 (7th Cir. 1992) (while § 1109(b) gives every party in interest the right to be heard on every issue in a chapter 11 case, to be able to proceed under a particular provision of the statute the party must also have prudential standing). *See also In re Quigley Co., Inc.*, 2008 WL 2854130, at *5 (Bankr. S.D.N.Y. July 25, 2008) (collecting cases on the point). In order to have prudential standing and be a real party in interest under Fed. R. Civ. P. 17(a), a party may not assert the rights of a third-party but must be enforcing its personal rights arising from a direct injury. *Automotive Professionals*, 389 B.R. at 633-34; *Quigley*, 2008 WL 2854130 at *5.

Consequently, in order for a party to have standing to seek a remedy such as equitable subordination, the party must be the holder of the rights that are sought to be enforced, *i.e.*, the holder of the claim that gives rise to a remedy. Stated differently, "[a] federal court's jurisdiction therefore can be invoked only when the *plaintiff himself* has suffered some threatened or actual injury resulting from the putatively illegal action . . . ." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal quotations and citations omitted, emphasis added). That is why parties in bankruptcy cases such as Snitzer have no standing to assert derivative claims, even those requesting equitable subordination, for their personal benefit. *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589-590 (7th Cir. 2003); *In re Big Wheel Holding Co., Inc.*, 214 B.R. 945, 951-52 (D. Del. 1997); *In re Elrod Holdings Corp.*, 2008 WL 3200094, at *4-*5 (Bankr. D. Del. Aug. 7, 2008); *In re Morpheus Lights, Inc.*, 228 B.R. 449, 453 (Bankr. N.D. Cal. 1998).

In this case, the asserted claims for commingling of assets, undercapitalization and mismanagement are classic derivative claims enforceable by the Debtors, or derivatively for the benefit of the Debtors. *See, e.g., Caparos v. Morton*, 845 N.E.2d 773, 782 (Ill. App. 2006) (mismanagement, diversion of assets, negligence, actions beyond authority and failure to perform elements of an agreement are "proper derivative actions"). As such, the underlying claims being prosecuted by Snitzer are property of the Debtors' chapter 11 estates and may not be appropriated for Snitzer's personal benefit. *In re Van Dresser Corp.*, 128 F.3d 945, 947 (6th Cir. 1997); *In re Real Marketing Servs., LLC*, 309 B.R. 783, 788 (S.D. Cal. 2004) (applying *Van Dresser* to a limited liability company in bankruptcy).

Congress did not create a new cause of action in § 510(c). Instead, Congress codified a pre-Code equitable remedy created by bankruptcy courts to promote fairness and equity. 3 NORTON BANKRUPTCY LAW AND PRACTICE § 53:3 at p. 53-8 n.5 (3d ed. 2008) (citing *Taylor v. Standard Gas & Elec. Co.*, 306 U.S. 307 (1939) and *Pepper v. Litton*, 308 U.S. 295 (1939)). There is an important difference between claims and remedies. Section 101(5) of the Bankruptcy Code defines the term "claim" as a "right to payment . . ." or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . . ." 11 U.S.C. § 101(5). A remedy, on the other hand, is "[t]he means employed to enforce a right or redress an injury, as distinguished from the right, which is a well founded or acknowledged claim." BLACK'S LAW DICTIONARY at 1294 (6th ed. 1990) (citing *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372 (1918)). "The distinction between rights and remedies is fundamental." *Chelentis*, 247 U.S. at 384. While an injury gives rise to a claim, "[s]ubordination is an equitable remedy . . . ," 4 COLLIER ON BANKRUPTCY § 510.02[1] at p. 510-4 (15th ed. 2008), as distinguished from the underlying claim giving rise to the remedy.

In order to seek the remedy of equitable subordination, the plaintiff must be the owner of the underlying claim that gives rise to the remedy. *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159-60 (7th Cir. 1996) (dismissing a derivative claim under Fed. R. Civ. P. 17(a) while stating that "a change of label from 'standing' to 'real party in interest' does not affect the analysis." Accord *Big Wheel*, 214 B.R. at 951-52 (granting summary judgment against a party asserting a § 510(c) complaint because the underlying claim was derivative and belonged to the corporate debtor); *Morpheus Lights,* 228 B.R. at 453 (denying an individual creditor standing to bring an equitable subordination claim that was the corporate debtor's claim). The key question that the *Morpheus* court addressed was whether the individual creditor, as opposed to the debtor's estate, owned the claim:

> Whether an individual creditor can bring an equitable subordination claim against another creditor turns on whether the creditor-plaintiff is the holder of the claim. If the creditor-plaintiff holds the claim, then the creditor-plaintiff has standing to pursue its claim. If, for example, the estate holds the claim, then a representative of the estate, such as the trustee or debtor in possession, is the proper party to bring the claim. Such an analysis is necessary to promote the orderly and equitable administration of the bankruptcy estate by preventing individual creditors from pursuing separate actions to the detriment of other creditors and of the estate as a whole. The analysis begins with whether the claim constitutes property of the bankruptcy estate. A creditor-plaintiff only has standing if the claim is not property of the estate because property of the estate does not belong to any individual creditor.

*Id*. (citations omitted). *Accord Frank*, 83 F.3d at 159 ("Does the claim belong to Frank personally, or to Hadesman & Frank, Inc.?").

*Big Wheel* came to the same conclusion but without making the analysis under the rubric of standing. In *Big Wheel* the court summarily dismissed minority shareholders' request for an equitable subordination remedy because the underlying claim, an alleged theft of a corporate opportunity, belonged to the corporate debtor, not the plaintiff minority shareholders. *Big Wheel*, 214 B.R. at 951-53. The *Big Wheel* court concluded that even if the defendant

majority shareholders had usurped a corporate opportunity, because the underlying claim

belonged to the debtor, the defendants' conduct did "not warrant a remedy of equitable

subordination *for plaintiffs*."  *Id*. at 952 (emphasis added).  Thus, the equitable subordination

claim was dismissed as a matter of law.  *Id*.  *Accord Elrod Holdings*, 2008 WL 3200094, at *5

(distinguishing *Vitreous Steel* and denying a secured creditor's motion for leave to file an

equitable subordination claim based on injuries to the debtor as opposed to an individual injury

to the secured creditor).

     While *Real Marketing*, 309 B.R. 783, did not involve an equitable subordination claim,

the logic of its ruling in affirming the bankruptcy court's judgment that dismissed derivative

claims labeled as direct claims applies here.  The *Real Marketing* court, relying on the Sixth

Circuit's analysis in *Van Dresser*, 128 F.3d 945, focused not on the member-appellee's legal

conclusion that it owned the claims being brought, but instead on the member-appellee's factual

contentions showing that the limited liability company chapter 11 debtor had suffered the injury

sought to be remedied as opposed to the member-appellee.  *Real Marketing*, 309 B.R. at 789-92

(applying *Van Dresser* to several different types of claims).

     Importantly, the *Real Marketing* court recognized and applied the *Van Dresser* rule that

"if the debtor could have raised a claim at the commencement of the bankruptcy case, the claim

becomes the *exclusive* property of the bankruptcy estate and cannot be asserted by a creditor."

309 B.R. at 788 (emphasis added), citing *Van Dresser*, 128 F.3d at 947.  *See generally Butner v.*

*United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

Thus, even if Snitzer could have asserted both direct and derivative claims against Kinsella and

Diamond outside of the Debtors' chapter 11 cases, "the bankruptcy code changes this outcome."

*Van Dresser*, 128 F.3d at 947.  Once the Debtors' filed their chapter 11 cases, only the Debtors

or a representative of the Debtors' estate[7] could seek to redress injuries to the Debtors.  *Id.*
*Accord Real Marketing*, 309 B.R. at 788.

Indeed, if Snitzer has standing to assert an equitable subordination complaint based on
the Debtors' rights having been allegedly violated, then every individual creditor of the Debtors'
chapter 11 estates could also bring an equitable subordination lawsuit against Kinsella and
Diamond in their capacity as creditors of the Debtors.[8]  This could lead to dozens of separate
suits with the possibility of inconsistent outcomes and would lead to a court-clogging
multiplicity of lawsuits.  That is not a result that this Court should condone.  It is contrary to the
well-established policy that the trustee or debtor in possession has the exclusive right to
prosecute claims that were the debtor's claims at the time the bankruptcy proceeding is
instituted, or are "generalized" claims that impact the right of all creditors and parties in interest
equally.  11 U.S.C. §§ 323(a), 323(b), 541(a), and 1107(a).  *Perkins*, 902 F.2d at 1257-58;
*Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1343-44 (7th Cir.
1987), *cert. denied*, 485 U.S. 906 (1988); *Chrysler Rail Transp. Corp. v. Indiana Hi-Rail Corp.*,
1996 WL 238788, at *3 (N.D. Ill. May 7, 1996).

3.    **Snitzer violated the automatic stay by usurping the Debtors' claims for
Snitzer's personal benefit.**

Whether a claim properly belongs to the estate of an entity in bankruptcy or to a
shareholder individually is a matter to be determined by applicable state law, *Kennedy*, 348 F.3d

---

[7] *See generally In re Perkins*, 902 F.2d 1254, 1257-58 (7th Cir. 1990) (recognizing that a
trustee (or debtor in possession in a chapter 11 case) may be divested of his exclusive authority
to prosecute claims of the estate under narrow circumstances not present here).

[8] Both Kinsella and Diamond have filed proofs of claim against the Debtors for monies
loaned prepetition.

at 589-90. *Accord Van Dresser*, 128 F.3d at 947. The applicable state law here is that of Illinois given that all of the parties, the Debtors and the forum are Illinois based.

Illinois follows the widespread rule that an action is derivative if the complaint alleges that the gravamen of the claim is an injury to the entity as opposed to a unique injury to the individual shareholder, partner or limited liability company member. *Frank*, 83 F.3d at 160. *Accord Ching v. Porada*, 2008 WL 2468733, at *3 (N.D. Ill. June 20, 2008); *Caparos v. Morton*, 845 N.E.2d 773, 781 (Ill. App. Ct. 2006); *Sterling Radio Stations, Inc. v. Weinstine*, 765 N.E.2d 56, 60 (Ill. App. Ct. 2002); *Spillyards v. Abboud*, 662 NE.2d 1358, 1363 (Ill. App. Ct. 1996). *See generally* Kaleinberge, *Direct Versus Derivative and the Law of Limited Liability Companies*, 58 Baylor L. Rev. 63, 70-74 and 87-93 (2006). The Seventh Circuit has rejected the notion that owners of a closely held entity can bring direct claims without the "complex, time-consuming, and often unnecessary formalities of derivative litigation." *Frank*, 83 F.3d at 161.[9] The reasons behind that ruling are even more compelling in the context of a bankruptcy case where owners, such as Snitzer, get a distribution only if the entity is solvent and creditors are fully paid first. *Kennedy*, 348 F.3d at 589.

---

[9] The Debtors are aware of *Levy v. Markal Sales Corp.*, 643 N.E.2d 1206, 1218 (Ill. App. Ct. 1994), which seems to allow a shareholder of a closely held corporation to sue directly instead of derivatively for theft of a corporate opportunity. *Levy*, however, is distinguishable and its holding in this regard has been rejected by the Seventh Circuit. First, *Levy* noted that the majority shareholders did not contest that their actions "operated as a conversion of [the minority shareholder's] stock." 643 N.E.2d at 1218. Thus, there was a unique and uncontested injury to the plaintiff-shareholder. In addition, the court limited the plaintiff's damages as though the case were a derivative action. 643 N.E.2d at 1221-22. Finally, it should be noted that *Frank* was decided two years after *Levy* and the case relied on by *Levy*, *Zokoych v. Spalding*, 344 N.E.2d 805 (Ill. App. Ct. 1976), was also cited by *Frank* for the opposite legal conclusion. 83 F.3d at 160. Thus, the Seventh Circuit has at least implicitly if not explicitly rejected *Levy's* statement that a shareholder of a closely held corporation may bring direct claims despite the claims being derivative in nature. *Frank*, 83 F.3d at 160. *Frank* remains the controlling precedent on this issue. *Ching v. Porada*, 2008 WL 2468733, at *4.

Even a cursory review of the third-party complaint reveals that there is no factual allegation that could lead a court to conclude that Snitzer suffered a unique or differentiated injury from any injury allegedly suffered by the Debtors and all of their creditors and other stakeholders. Indeed, just the opposite is true. Kinsella's and Diamond's alleged transgressions of commingling assets, undercapitalization and mismanagement relate to the Debtors and their assets, not Snitzer and Snitzer's assets. Thus, all of the Debtors' stakeholders would have suffered the same injury as Snitzer allegedly suffered. In these circumstances, the underlying claims asserted by Snitzer are derivative and belong to the Debtors. *Kennedy,* 348 F.3d at 589-90; *Frank*, 83 F.3d at 160-61; *Ching v. Porada*, 2008 WL 2468733, at *3-*4; *Caparos*, 845 N.E.2d at 782 ("Proper derivative actions include claims for a general partner's mismanagement, negligence, diversion of assets, actions beyond authority, and failure to perform elements of an agreement.") (citations omitted).

It is equally clear that Snitzer's unauthorized use of the Debtors' property is a violation of § 362(a)(3). *In re Enyedi*, 371 B.R. 327, 333-34 (Bankr. N.D. Ill. 2007), and cases cited therein. The plain language of § 362(a)(3) precludes a party, absent prior relief from the automatic stay by order of the bankruptcy court, from taking any act "to exercise control over property of the [Debtors] estate[s]." 11 U.S.C. § 362(a)(3). Thus, Snitzer's conduct in pressing the underlying claims for Snitzer's personal benefit is a blatant violation of the automatic stay. Accordingly, the third-party complaint, even though brought for equitable subordination of Kinsella's and Diamond's interests in the Debtors to those of Snitzer, should have been dismissed.

Even if Snitzer could have maintained an action against Kinsella and Diamond outside of bankruptcy, Snitzer's conduct in this context violated the automatic stay as it could have an indirect adverse impact on the Debtors' claims against Kinsella and Diamond. *Real Marketing*,

309 B.R. at 790.  *See generally In re Rimsat, Ltd.*, 98 F.3d 956, 961-62 (7th Cir. 1996) (indirect as well as direct violations of the automatic stay are actionable).  The important point, however, is that once the Debtors commenced their cases under chapter 11, Snitzer lost his capacity to commence any claim against Kinsella and Diamond based on alleged injuries to the Debtors. *Van Dresser*, 128 F.3d at 947-48.  Consequently, the third-party complaint should have been dismissed and sanctions should have been awarded for Snitzer's violation of § 362(a)(3).

### 4.     *Vitreous Steel* does not allow Snitzer to prosecute the Debtors' claims for Snitzer's personal benefit.

The bankruptcy court relied primarily on *Vitreous Steel* to deny the Debtors' motion to dismiss the third-party complaint.  *In re SRJ Enters., Inc.*, 151 B.R. 189 (Bankr. N.D. Ill. 1993), was also cited.  (Order at 13, R. 13, Dkt. 676.)  Neither case, however, involved a party other than the trustee or estate representative prosecuting an equitable subordination claim based purely on injuries to the debtor as opposed to the party seeking relief under § 510(c).  *Compare Elrod Holdings*, 2007 WL 3200094, at *4-*5 (distinguishing *Vitreous Steel* and cases of like holding).

In *Vitreous Steel* an unsecured creditor ("NIPSCO") joined with the trustee to bring a variety of claims against a secured creditor (the "Bank").  The Seventh Circuit granted the Bank's motion to dismiss the unsecured creditor as a party to all of the claims except the equitable subordination claim.  *Vitreous Steel*, 911 F.2d at 1231.

The factual basis of NIPSCO's equitable subordination claim is unclear from the decision.  All that was said about the specific basis of the claim was that:  "Count VI charged the Bank with fraud, and asked that its debt be equitably subordinated."  *Id*. at 1230.  Thus, NIPSCO would have been directly injured by the Bank's conduct and would have had a direct fraud claim against the Bank outside of a bankruptcy proceeding.

In any event, the Seventh Circuit did not focus on whether NIPSCO had suffered a direct as opposed to a derivative injury. However, given the nature of a fraud claim and the general factual outline described in *Vitreous Steel*, NIPSCO would have been able to allege a direct injury by virtue of the Bank's conduct. Further, the court did not indicate that the fraud claim was a derivative claim. Instead, the court focused merely on the remedy and concluded that NIPSCO had an interest in subordination "separate and apart from the interests of the estate as a whole." *Vitreous Steel*, 911 F.2d at 1231. Consequently, the court determined that NIPSCO "should have an opportunity to pursue its separate interest." *Id*.

This case is distinguishable from *Vitreous Steel* in at least two key respects. First, the claims being pursued here are derivative claims and not Snitzer's direct claims. Second, the dispute in *Vitreous Steel* was between an unsecured creditor and a partially secured creditor, which the court noted made the subordination claim "not a benefit to all unsecured creditors equally." 911 F.2d at 1231. Here, the dispute is between equity holders and involves the rights of all stakeholders that have a derivative interest in the Debtors' claims against Kinsella and Diamond.

In contrast to *Vitreous Steel*, the claims made by Snitzer belong solely to the Debtors, *Van Dresser*, 128 F.3d at 947, and their prosecution or settlement will have an equal impact on the rights of each member of each class of the Debtors' stakeholders. Thus Snitzer may not pursue them for its personal benefit. *Elrod Holdings*, 2008 WL 3200094, at *4-*5 (distinguishing *Vitreous Steel*). In addition, Snitzer's equitable subordination claim will necessarily require the bankruptcy court to make findings of fact and legal conclusions that could well impede any claim brought by or sought to be settled by the Debtors for the benefit of all creditors. Further, Snitzer's prosecution of these claims will impair the Debtors' ability to

maximize the value of their assets and propose a chapter 11 plan that deals with the Debtors' claims against Kinsella and Diamond.  None of those considerations was present in the *Vitreous Steel* chapter 7 case.

*SRJ Enters.*, *supra*, presents an even clearer contrast.  In *SRJ Enters.,* the dispute was between two secured creditors.  The junior secured creditor ("Success") attempted to enhance its distribution at the expense of the senior secured creditor ("NBD") through equitable subordination of NBD's claim.  *SRJ Enters.*, 151 B.R. at 191.

The basis of Success' equitable subordination claim was NBD's failure to vigorously enforce its rights against the debtor as permitted by NBD's loan documents.  *Id*. at 197.  This, according to Success, led to a direct injury to Success and caused a dissipation of Success' collateral.  *SRJ Enters.*, 151 B.R. at 198 ("Success seeks to subordinate NBD for failing to police the Debtor's conduct . . . .").  The court rejected Success' argument as a matter of law because NBD had no agreement with Success imposing such a duty.  Thus, the *SRJ Enters.* court dismissed the § 510(c) claim for its failure to state a valid equitable subordination claim. *SRJ Enters.*, 151 B.R. at 198.

Therefore, *SRJ Enters.*' statement on standing is *dicta*.  *SRJ Enters.*, 151 B.R. at 194. Moreover, *SRJ Enters.* is readily distinguishable from this case.  In *SRJ Enters.*, Success was clearly relying on NBD's breach of a duty allegedly owed directly to Success.  The problem with Success' § 510(c) claim was not a lack of direct injury, as in this case, but a lack of any duty owed to it by NBD.  Thus, *SRJ Enters.* is of no help to Snitzer.

It is no answer for Snitzer to allege that Kinsella and Diamond owed Snitzer fiduciary duties.  While generally a true statement, Snitzer is not accusing Kinsella and Diamond of injuring Snitzer directly.  Thus, the Seventh Circuit's analysis in *Frank*, 83 F.3d 160-61, is fatal

to Snitzer's personal breach of fiduciary duty claim. *Ching v. Porada*, 2008 WL 2468733, at *3 (breach of fiduciary duty claim was a derivative claim because the injury alleged was that of the closely-held corporation and not the shareholder's). Otherwise, there would be no derivative claims in cases of closely held entities where fiduciary duties between equity holders is the rule. The Seventh Circuit, however, has flatly rejected such a notion. *Frank*, 83 F.3d at 161. *See also Ching v. Porada*, 2008 WL 2468733, at *3-*4, and cases cited therein; *Thomas v. Nat'l Can. Fin. Corp.*, 1995 WL 54473, at *2 (N.D. Ill. Feb. 7, 1995) (a party's direct contractual relationship with a lender does not transform a derivative claim into a direct claim.). *Golden Tee, Inc. v. Venture Golf Sch., Inc.*, 969 S.W.2d 625, 629-30 (Ark. 1998) (breach of partnership agreement resulted in a derivative, not a direct, claim).

In addition, if every injury to a closely-held entity caused by one equity holder resulted in a second injury to the other equity holder, the result would be a double recovery in every such case. One recovery would go to the entity and a second would go to the non-acting equity holder, both for the same injury. Illinois law, however, strictly forbids double recoveries for the same injury by two separate claimants. *See, e.g., Klier v. Siegel*, 558 N.E. 2d 583, 588 (Ill. App. Ct. 1990) ("Illinois has a strong public policy against a plaintiff's double recovery for the same injury."). *Accord Van Dresser*, 128 F.3d at 948 (a corporation and its shareholder cannot both recover on the same claim).

In short, unless Kinsella's and Diamond's alleged conduct caused Snitzer to be injured separately and distinctly from the injuries allegedly suffered by the Debtors from such conduct (*see, e.g., Ching v. Porada*, 2008 WL 2468733, at *3, citing *Frank* and other cases), Snitzer's invocation of the fiduciary duty owed by Kinsella and Diamond, no matter how frequently it is alleged, is of no avail. The general fiduciary duty owed by limited liability company members to

each other simply does not transform every derivative claim into a direct claim.  Consequently,

Snitzer's equitable subordination claim, which alleges injuries to the Debtors only, remains the

Debtors' claim despite Kinsella's and Diamond's fiduciary duty to Snitzer.

### CONCLUSION

Based on the foregoing, the Debtors request that this Court (a) reverse the Order entered

by the bankruptcy court and (b) remand this case with directions to the bankruptcy court to:

(i) dismiss Snitzer's new equitable subordination complaint in Adv. Pro. No. 08-502 and

(ii) conduct a hearing to determine whether sanctions are appropriate and the nature and amount

of such sanctions.

<div style="margin-left:50%;">

Respectfully submitted,

J.S. II, L.L.C.; RIVER VILLAGE I, L.L.C.;
and RIVER VILLAGE WEST, L.L.C.

</div>

Dated:  August 12, 2008                     By:    /s/ Steven B. Towbin
                                                    One of their attorneys

Steven B. Towbin (#2848546)
Janice A. Alwin (#6277043)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
P:  (312) 276-1333
F:  (312) 275-0569